Brian COHEN, Plaintiff–Appellant,

v.

Robert SMITH, Lieutenant; Township of Plymouth; Kathleen Keen–McCarthy, Plymouth Township Supervisor, Defendants–Appellees.

No. 01–1666.

United States Court of Appeals, Sixth Circuit.

Feb. 12, 2003.

Before GUY, SILER and
BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff appeals the district court's order granting defendants' motion for summary judgment. The court held that plaintiff's conduct was not constitutionally protected and that the adverse action suffered by plaintiff as a result of his conduct could not be attributed to the defendants. While we decline to reach the question of whether the plaintiff's speech in this case falls under the protective umbrella of the First Amendment, we hold that the plaintiff failed to show that the adverse action of which he complains is attributable to the defendants, and, therefore, affirm the district court's order dismissing the case.

I.

Appellant Brian Cohen, at the time of the events giving rise to this lawsuit, was in his fourth year of a six-year medical residency program at Sinai Hospital in Detroit. On the morning of November 2, 1997, Dr. Cohen was ticketed by an officer of the Plymouth Township police department for driving with expired license plates. Angered by what he perceived as the rude and threatening attitude of the officer and upset about receiving the ticket, Dr. Cohen returned home and called the police department to lodge a complaint against the ticketing officer. The police dispatcher who answered the call told Dr. Cohen, in a conversation recorded on tape, that there was no one available to take his complaint, whereupon Dr. Cohen became angry, cursed at the dispatcher, and told her that if any of Plymouth Township's officers came into his emergency room he would "spit on [their] asses."

Several days later, Dr. Cohen stopped by the police station on his way home from work to discuss the ticket after his wife tried to pay it but was unable to do so. He was shown into the office of acting police chief and defendant/appellee Lt. Robert Smith, who realized, after Dr. Cohen identified himself as a local surgeon and began complaining about his ticket, that Dr. Cohen was the same individual who had cursed at the dispatcher over the phone on November 2. Lt. Smith demanded an apology from Dr. Cohen, and asked him where he worked; Dr. Cohen, not wanting to reveal his place of employment, lied about the hospital with which he was affiliated. After the two men had reached an impasse in their discussion, Lt. Smith asked Dr. Cohen to leave his office, and Dr. Cohen again made statements regarding how he hoped that no Plymouth Township police officers ever came into his emergency room.

Lt. Smith approached his direct supervisor and co-defendant/appellee in this case, township supervisor Kathleen Keen–McCarthy, about Dr. Cohen's behavior. Together Smith and Keen–McCarthy agreed that Dr. Cohen, by exhibiting a temper and issuing what they took to be threats, was a potential danger in the workplace.[1] After discovering Dr. Cohen's true place of employment, Lt. Smith called Sinai Hospital and left a message with a secretary there explaining his belief that Dr. Cohen was a workplace threat and a security problem. Lt. Smith later met with Dr. Cohen's supervisors and played for them the tape of Dr. Cohen's conversation with the dispatcher on November 2, the tape of another phone call Dr. Cohen had placed to the police department in 1996 complaining about a ticket his wife had received at the time, related the incident that took place when Dr. Cohen visited the police station and spoke with Lt. Smith, and alerted them to a complaint filed against Dr. Cohen in a different city for making threats against a pest control service provider who happened to be a part-time police officer.[2]

On January 27, 1998, Dr. Clayman, the Chief of Dr. Cohen's residency program, suspended Dr. Cohen from the program with pay and had him escorted from the hospital by security persons, giving him the option of either resigning immediately or appealing Clayman's decision to remove him permanently from the residency program. Dr. Cohen chose to appeal his termination, and was told by that appeals committee that the decision to expel him from the residency program was the result of a series of problems that had occurred

since he began his residency at Sinai in July 1993:

1. *February 1994* – The Employee Records Department at Sinai issued a complaint after Dr. Cohen had been verbally abusive of one of their personnel. Following this incident, Dr. Cohen was counseled by Dr. Lewis Clayman, the Program Director. Dr. Cohen was informed that unprofessional behavior, such as this, was not acceptable. Furthermore, he was "reminded that being a doctor does not entail any specific or special right and privileges, and that he best not consider that this title gives him a station different from those without it."

2. *June 1995* – Dr. Cohen was counseled regarding his relations with his fellow residents and his unwillingness to accept assignments.

3. *October 1996* – Sinai Security filed a complaint on Dr. Cohen. Dr. Cohen had become verbally abusive with a security officer, when the officer was unable to help Dr. Cohen.

Following this complaint, Dr. Clayman once again met with Dr. Cohen. They reviewed this complaint and ongoing problems that Dr. Cohen was having with his fellow residents. Dr. Cohen was again counseled as to the importance of appropriate behavior; and that his actions were a reflection of the profession, his program director, and the institution where he worked. Finally, Dr. Clayman told Dr. Cohen that "if I (Clayman) receive another complaint like this, that he (Cohen) will not complete his residency and he will be terminated."

---

1. Plymouth Township had suffered several fatalities in the years prior to 1997 from violence at local manufacturing facilities carried out by estranged homicidal employees.

2. The complainant in the latter incident did not take any further action upon the complaint he filed, and–at least on the record before us–the filed complaint appears to lack merit.

4. *December 1997* – Dr. Clayman was called aside by a senior member of the Anesthesiology Staff (Dr. Cohen was rotating on that service at the time). In this conversation, questions regarding Dr. Cohen's trustworthiness were raised.

5. *November 1997* – [Relation of the events reported to the supervisors by Lt. Smith.]

In July of 1998, the Dean overturned the decision of the appeals committee, and allowed Dr. Cohen to continue his residency at a different hospital provided that certain conditions (such as attending counseling regularly) were met. In addition, the Dean required Dr. Cohen to complete two more years of residency, beginning in fall 1998. Due to the temporary suspension from his residency and the terms of his reinstatement to his position, Dr. Cohen's expected completion date was pushed back. one year, and he claims that he lost $150,-000—$200,000 in earnings as a result.

Dr. Cohen filed suit under 42 U.S.C. § 1983, against Lt. Smith, Supervisor Keen–McCarthy, and Plymouth Township, alleging that 1) he lost wages and job opportunities after the defendants interfered with his job contract/business relationship with Wayne State University (under whose auspices the residency program was conducted); 2) Lt. Smith's action of contacting Dr. Cohen's employer was an act of unlawful retaliation against speech protected by the First Amendment; 3) Plymouth Township's failure to train its police officers to accept criticism without retaliation was a proximate cause of the harm he suffered; and 4) the named defendants conspired to retaliate against Dr. Cohen for the comments he made.

The district court, addressing Cohen's federal law claims in the defendants' motion for summary judgment, found that Cohen failed to meet the three elements necessary to prevail on a claim that a public official impermissibly retaliated against him for an expression of constitutionally protected speech, including that the plaintiff was engaged in constitutionally protected conduct and that the adverse action taken against the plaintiff was motivated by the exercise of plaintiff's protected conduct. The court held that the conduct for which the defendants allegedly retaliated was not protected, and because the defendants only instigated an investigation leading to Dr. Cohen's removal, but had no power to fire him, the adverse action taken against Dr. Cohen could not be the result of his exercise of protected speech. The district court granted the defendants' motion for summary judgment, and Dr. Cohen timely appeals.

## II.

We review de novo the district court's ruling on a motion for summary judgment, *Thaddeus–X v. Blatter*, 175 F.3d 378, 386 (6th Cir.1999) (en banc), employing the same Rule 56(c) standard as used by the district court. *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 612 (6th Cir.2002). In a motion for summary judgment, the moving party has the burden of showing that there is no material factual dispute between the parties, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once that burden is met the opposing party must present "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed. Rule Civ. Proc. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "[T]he inferences to be drawn from underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

Cohen argues that the defendants retaliated against him in violation of the First Amendment for exercising his constitutionally protected right to criticize public officials. In general, retaliation claims involve a plaintiff engaged in conduct protected by the Constitution or by statute and a defendant who takes an adverse action against the plaintiff based, at least in part, on plaintiff's protected conduct. *Thaddeus–X,* 175 F.3d at 386–87. First Amendment retaliation claims are unique only insofar as a court adjudicating such claims may have to determine whether the conduct or speech at issue in the case is protected by the Constitution given the context in which the conduct occurred. *Id.* at 389 ("The fact that certain conduct of the plaintiff must be 'protected' in order to state a claim does not change with the setting—what changes is the type of conduct deemed protected in that particular setting.").

■ In order to state a claim for First Amendment retaliation, Cohen must meet a three part test, showing that: "1) he engaged in protected conduct; 2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and 3) the adverse action was motivated at least in part by the protected conduct." *Id.* at 394. Because we hold that the adverse action of which Cohen complains does not bear that necessary causal connection to the conduct at issue, we are able to avoid reaching the constitutional question of whether Cohen's conduct was protected under the First Amendment. *See United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, 478, 115 S.Ct.

1003, 130 L.Ed.2d 964 (1995) (noting a "policy of avoiding unnecessary adjudication of constitutional issues"); *Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); *Bowman v. Tenn. Valley Auth.,* 744 F.2d 1207, 1211 (6th Cir.1984) ("If we are able to decide this appeal on non-constitutional grounds we will do so and will not reach the First and Fifth Amendment issues.").

In *Shehee v. Luttrell,* 199 F.3d 295, 301 (6th Cir.1999), we discussed a plaintiff's First Amendment retaliation claim alleging that he had been fired from his job in the prison commissary due to the fact that he had filed complaints against the commissary supervisor and another prison employee. Subsequent to plaintiff's filing of his complaint against the two prison employees, the immediate boss of those employees fired plaintiff from his job in the commissary. *Id.* at 298–99. While these two individuals may have instigated the removal of the plaintiff from his job at the commissary, they did not fire, nor did they have the authority to fire, the plaintiff. *Id.* at 300–01. We therefore held that the plaintiff did "not set forth a valid First Amendment retaliation claim against [defendants]." *Id.* at 301.

Similarly, the harm of which Dr. Cohen complains, such as humiliation and lost wages, is attributable to his supervisors' decision to remove him from the medical residency program at Sinai Hospital. Defendants Smith and Keen–McCarthy had neither the ability nor the authority to take adverse employment action against Dr. Cohen, even if a warning from a police

144

officer could be expected to carry more weight with Dr. Cohen's supervisors than would, for instance, a warning from another type of government official. The defendants were merely messengers, and their complete lack of authority to take the adverse action of which Dr. Cohen complains suggests that Dr. Cohen is, metaphorically, barking up the wrong tree in suing them. He does not set forth a valid First Amendment retaliation claim against the defendants.

We note two additional factors that bolster our conclusion. First, as the residency program's disciplinary appeals committee noted, the decision to expel Dr. Cohen was not based solely upon the events reported to Dr. Cohen's supervisors by Lt. Smith. Instead, its decision was based upon a pattern of behavior over several years suggesting to them that Dr. Cohen may not be suited temperamentally to be a surgeon. Dr. Cohen's conduct towards Plymouth Township's police department was just one more illustration of his inability to control his temper, and did not provide the sole reason for his supervisors' action against him.

■ Second, even if we were to hold that Dr. Cohen was engaged in constitutionally protected conduct when he cursed at and perhaps even threatened the Plymouth Township police, we would nonetheless be loath to find then that Dr. Cohen had a right to have the police remain silent about the incident. Essentially, Dr. Cohen proposes that we hold that police officers who suffer verbal abuse at the hands of a citizen have an obligation to refrain from mentioning the incident, even when, as appears to be the case here, the officers relate the incident to others with truth and accuracy. This proposition lacks a basis in either law or prudence.

III.

For the above stated reasons, we AFFIRM the grant of summary judgment in favor of the defendants.

RALPH B. GUY, Jr., Circuit Judge, Concurring in Result.

GUY, Circuit Judge.

I concur in the result reached by the majority opinion but would affirm the grant of summary judgment on alternative grounds. An adverse action is one that would "deter a person of ordinary firmness" from continuing to exercise his First Amendment rights. *Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999). The act of a police chief in contacting an employer of a complaining citizen could have a chilling effect on the continued exercise of First Amendment rights and might, therefore, constitute an adverse action. Without deciding this issue, I would find that defendants are entitled to summary judgment on qualified immunity grounds. At the time of the alleged incidents in this case, it was well-established that arresting or detaining an individual in retaliation for criticizing the police, even through the use of crude language, violates the First Amendment. *See Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir.1990). A police officer would have no reason to know, however, that truthfully informing an employer of displays of extreme anger out of concern for workplace violence would violate the First Amendment. There were no cases addressing the specific or even similar facts to those presented in this case.