Terri A. POPPY, Plaintiff–Appellant,

v.

CITY OF WILLOUGHBY HILLS; Morton O'Ryan, Defendants–Appellees.

No. 02–4196.

United States Court of Appeals, Sixth Circuit.

April 8, 2004.

---

Kenneth D. Myers, Cleveland, OH, for Plaintiff–Appellant.

John T. McLandrich, Paul J. Cristallo, Mazanec, Raskin & Ryder, Cleveland, OH, for Defendants–Appellees.

Before: ROGERS and COOK, Circuit Judges; and SCHWARZER, Senior District Judge.*

COOK, Circuit Judge.

Terri Poppy appeals the district court's grant of summary judgment in favor of the City of Willoughby Hills and its mayor, Morton O'Ryan, on Poppy's § 1983 claims alleging that O'Ryan took various adverse employment actions against her in retaliation for exercising her First Amendment right to support O'Ryan's political opponent. We affirm.

---

* The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

## I

Poppy began working as Clerk of the Willoughby Hills City Council in 1995. In 1999, Poppy supported the opponent of the incumbent mayor, O'Ryan. Poppy claims that after O'Ryan was reelected, he attempted to punish her for supporting his opponent. O'Ryan's allegedly retaliatory actions included: (1) lobbying the City Council to fire her; (2) refusing to make her position full-time; (3) denying her health benefits and merit raises; (4) paying higher salaries to other employees; (5) limiting reimbursement for her continuing education courses; (6) instructing the finance director not to process a purchase order she submitted; (7) instructing the finance director to withhold twenty-four hours of her pay for time spent attending a seminar; (8) reviewing Poppy's time sheets; (9) demanding keys to her office; (10) forbidding her from using the City's credit card; (11) installing a surveillance camera outside her office and distributing to the media an embarrassing videotape of her; and (12) making a rude gesture and comment to her.[1]

## II

To establish a First Amendment retaliation claim, a plaintiff must prove three elements:

(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir.2000).

Defendants concede that the First Amendment protects Poppy's expression of support for a mayoral candidate. They dispute Poppy's claim that she suffered cognizable adverse actions and go on to contend that even if she did, it was not O'Ryan's retaliatory motive that caused any adverse actions.

In its well-reasoned opinion, the district court analyzed in detail every incident Poppy alleges to be an adverse action, concluding that each either involved a decision over which O'Ryan lacked control or did not adversely affect Poppy's employment. Although we will not repeat the district court's item-by-item analysis, we summarize below our reasons for agreeing with the district court's conclusions.

### A. Decisions Over Which O'Ryan Lacked Control

■ Poppy's most serious allegations are that O'Ryan attempted to persuade City Council to fire her and to deny her full-time status, raises, and other benefits. If O'Ryan had the authority to take any of these adverse actions himself, the actions would certainly satisfy the second element of a First Amendment retaliation claim in that they would chill an ordinary person from exercising her First Amendment rights. Poppy presented no evidence, however, that O'Ryan exercised any authority or control over the terms or conditions of her employment.

The parties agree that the City Council (and not O'Ryan) hired and could fire Poppy. And it was City Council that set her hours, salary and benefits. (Poppy Depo. at 42, 62, 107.) Because O'Ryan was not

---

**1.** The district court dismissed without prejudice Poppy's state-law claims, a ruling Poppy does not challenge on appeal.

the decisionmaker, he cannot be held liable under § 1983 for the City Council's decisions regarding Poppy's terms and conditions of employment including: denying her full-time status, denying in full her requested salary increases and health benefits, and declining to fund all the continuing education courses she wished to attend. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir.2001)("Winkler's comments do not demonstrate a causal connection between [plaintiff's] filing of grievances and the decision to transfer him because it is uncontroverted that she was not the decisionmaker in this case. Consequently, her statements cannot be taken as evidence of a retaliatory motive." (citation to record omitted)); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999) ("With respect to Shehee's First Amendment retaliation claims, Fleming and Morgan contend that they cannot be liable because they neither fired nor had the authority to fire Shehee from his job at the commissary, the retaliatory act of which Shehee complains. We agree."); *see also Cohen v. Smith*, 58 Fed. Appx. 139, 144 (6th Cir.2003) (unpublished) ("The defendants['] ... complete lack of authority to take the adverse action of which Dr. Cohen complains suggests that Dr. Cohen is, metaphorically, barking up the wrong tree in suing them."). O'Ryan's interferences with the processing of a purchase order and with payment for twenty-four hours of work similarly do not satisfy the causation element of a First Amendment retaliation claim, because again, he was not the final decisionmaker. City Council ordinances determined which purchases would be funded, and the City, at the instruction of the law director, paid Poppy for the twenty-four hours.

Poppy suggests that O'Ryan bears responsibility for these actions because O'Ryan's power to veto the City Council's decisions rendered the City Council a mere "rubber stamp" for his agenda. The City Council, however, had the authority to override O'Ryan's vetoes. Additionally, Poppy presented no evidence that O'Ryan ever vetoed any decision relating to her. And while Poppy asserts that "the District Court ignored the evidence presented by Appellant of the [Mayor's] inordinate influence over City Council" (Appellant's Br. at 35) and that "the Mayor exerted substantial influence and leverage to the point where City Council merely 'rubber stamped' his decisions regarding Appellant" (*Id.* at 36), these assertions lack evidentiary support that O'Ryan controlled the conditions of Poppy's employment. Indeed, our review of the record reveals exactly the opposite–for example, City Council ordinances increased Poppy's salary annually, (*e.g.*, J.A. at 319 (December 23, 1999 ordinance, signed by O'Ryan, approving a raise)), and despite O'Ryan's retaliatory intentions, the City Council reappointed Poppy in 2000 and 2001.

### B. Decisions That Did Not Adversely Affect Poppy's Employment

■■■ The other actions Poppy claims to be adverse would not inhibit an ordinary person from exercising her First Amendment rights, and thus do not satisfy the second element of a retaliation claim. Poppy fails to explain how conduct such as O'Ryan's reviewing her time sheets, requesting keys to her office to inspect records kept there, or installing a security camera in the hall outside her office adversely affected her employment and thereby deterred her from exercising her rights under the First Amendment. As a City Council employee working in a City Hall office, Poppy could reasonably expect people to seek access to the public files kept in her office and could reasonably expect to encounter video cameras in the hallways (Poppy's own brief acknowledges "other cameras around City Hall." (Appel-

lant's Br. at 12–13.)). Finally, O'Ryan's rude gesture ("giving the finger") and comment ("Up yours") were apparently complemented by Poppy's own rude behavior. In any case, such isolated incidents of childishness do not amount to cognizable adverse employment actions. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 397 (6th Cir.1999) (en banc) (noting that "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise" (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982))).

## III

In addition to objecting generally to the district court's ruling, Poppy challenges several particular aspects of the district court's decision. First, Poppy contends that the district court erred in granting summary judgment because "a state actor's motives are in question." (Appellant's Br. at 17.) By this Poppy seems to suggest that retaliatory motive is always a question for a jury. But courts routinely grant summary judgment in retaliation cases when–as in this case–no genuine issues of material fact exist. *See, e.g., Farmer v. Cleveland Public Power*, 295 F.3d 593, 602 (6th Cir.2002) (affirming grant of summary judgment for defendants on plaintiff's First Amendment retaliation claim, where plaintiff "failed to present any evidence that would support a finding that her speech was a substantial or motivating factor in the defendants' decision to diminish her job responsibilities"). Here, Poppy did not present any evidence that O'Ryan's retaliatory motive caused the City Council to subject her to sufficiently consequential adverse actions, and thus she failed to establish a triable issue of fact.

Poppy's final two arguments on appeal–that the district court erred in declining to find both that the City could be held liable under §˙1983 and that O'Ryan lacked qualified immunity–assume that O'Ryan's actions violated a constitutional right. But because Poppy failed to create a triable issue of fact regarding a First Amendment (or other constitutional) violation, the district court did not need to decide whether the city could be held liable under § 1983 or whether O'Ryan was entitled to qualified immunity.

## IV

For the foregoing reasons, we affirm the district court's judgment.

SCHWARZER, Senior District Judge, Dissenting in Part.

I respectfully dissent from the denial of Poppy's appeal. In *Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir.1999) (en banc), this court decided that for purposes of a First Amendment retaliation claim, "an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." ' *Id.* at 396. In *Bell v. Johnson*, 308 F.3d 594 (6th Cir.2002), the court elaborated on the application of the adverse action standard. The court held that "[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Id.* at 603. The court went on to say:

> Our discussion of the adverse action requirement in *Thaddeus–X* makes it clear that, in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law.

*Id.* And, quoting from *Thaddeus–X*, the court added:

We emphasize that while certain threats ... are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions,* and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.

*Id.* (quoting *Thaddeus–X,* 175 F.3d at 398).

The majority's initial error is that it proceeds from the premise that, to be actionable, an act must be an "adverse employment action." Our cases make clear that any act having a sufficiently chilling effect is actionable.

More importantly, the majority ignores the standard that controls the disposition of this appeal, namely, whether Poppy has presented sufficient evidence to permit a reasonable jury to find that "under the circumstances, the [defendant's] acts were capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Id.* at 606. "The plaintiff's evidentiary burden is merely to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury." *Id.*

A brief summary of the evidence in the record suffices to show Poppy has sustained her burden. O'Ryan testified on deposition that he spoke to members of the City Council "numerous times" about terminating Poppy "because she's very disruptive." He testified:

Q Do you remember approximately how many different occasions you have talked to somebody on Council about trying to get rid of her?

. . .

Q More than ten?

A Sure, yeah.

. . .

Q Whenever the opportunity arose, you spoke with them about [this]?

A No. No. I said when they could get rid of her, whatever, would make me happy.

. . .

I said at any time they wanted to get rid of her, it would make me happy, yes.

Q And that's because she was disruptive?

A Among other things.

Q Well what other things?

A Loud, disruptive

. . .

It got to the point I did not like her very much, that is a correct statement.

JA 400–401. O'Ryan also testified that Poppy's

A . . . quality of work was fine. Quality of work was fine.

Q Quality of work was fine?

A Never had any complaints about her quality. Just doing what she was supposed to do.

JA 402.

Two former council members testified on deposition that the council would have granted Poppy full-time status but for O'Ryan's opposition. Council member Michael Coleman stated that the council had drafted an ordinance making Poppy full-time, and added:

Well, just to be honest, basically when it came up on the floor I was told there is no way in hell that ordinance is going to pass for full-time.

Q You were told that by the mayor?

A Yes.

. . .

Q Do you know what he meant by that?

A I know exactly what he meant. He said he talked to [council members]

Lorentz and Germano and Camus and that it was not going to pass.

Q  Would it pass with a 4/3 majority?

A It would have passed and then vetoed.

Q  What would it have taken to override the veto?

A Five votes.

Q  And the mayor knew that he had three solid votes?

A That's what was indicated to me.

JA 483–84.  Former council member Peter Pike was asked whether

Q  ... despite all that, couldn't council have passed an ordinance that would have make [sic] Mrs. Poppy full-time?

A  ... Members of the council were threatened and the body was told if they attempted, it would be vetoed. . . .

Q  Do you know at any given time how many members of council would have voted in favor of Mrs. Poppy being given full-time benefits and how many would have voted against?

A Absolutely.  Unequivocally the majority at that time.

JA 447.

In the context of O'Ryan's admitted campaign to "get rid" of Poppy, all of the other acts and events of which the majority makes light take on significance, such as limiting her reimbursement for her continuing education course, instructing the finance director not to process her purchase order and to withhold her pay for time spent attending a seminar, reviewing her time sheets, demanding keys to her office, forbidding her from using the City's credit card, installing a surveillance camera outside her office, and allegedly distributing to the media an embarrassing videotape of her.  Taken together the evidence would permit the jury to find that O'Ryan subjected Poppy to a course of harassment in retaliation for her exercise of her First Amendment rights.  In *Thaddeus-X,* the court said:

> Judge Posner acknowledged that "since there is no justification for harassing people for exercising their constitutional rights [the effect on speech] need not be great in order to actionable."

175 F.3d at 397 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982)); *see also Bloch v. Ribar,* 156 F.3d 673, 679–80 (6th Cir.1998) (holding that acts causing embarrassment, humiliation, or emotional distress may constitute adverse action). Even if the acts complained of could in isolation be minimized or explained away-which hardly seems to be the case where a public employee is threatened with the loss of her livelihood-as the *Bart* court said, "more is alleged here—an entire campaign of harassment which though trivial in detail may have been substantial in gross." 677 F.2d at 625.

Thus, the proposition on which the majority's opinion rests is inapposite.[1]  It is

---

1. The cases cited by the majority are not relevant.  In *Rose v. Stephens,* 291 F.3d 917, 925 (6th Cir.2002), and *Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir.2001), the court upheld summary judgment because the plaintiffs had not engaged in protected activity. Moreover, it was uncontroverted in *Smith* that the defendant, the petitioner's prison counselor, "had no involvement in the [adverse action]."  250 F.3d at 1035, 1038.  The court similarly granted summary judgment in *Shehee v. Luttrell,* 199 F.3d 295 (6th Cir. 1999), because neither of the named defendants "were involved in ... the alleged adverse action."  *Id.* at 301.  In *Cohen v. Smith,* 58 Fed. Appx. 139 (6th Cir.2003) (unpublished), the court affirmed summary judgment where "[t]he defendants were merely messengers" and "had neither the ability nor the authority to take adverse [action]."  *Id.* at 143–44.  These cases do not support dismissal as a matter of law of Poppy's claim that

not true that because only the City Council, and not O'Ryan, could fire Poppy, O'Ryan could not be held liable under § 1983. The determinative question is whether on the evidence, viewed in its entirety and in the light most favorable to Poppy, a reasonable jury could find that O'Ryan engaged in a campaign of harassment designed to get rid of Poppy which "[was] capable of deterring a person of ordinary firmness from engaging in the protected activity." The answer to that question must be yes.

I would affirm the district court's dismissal of Poppy's claim against the City, but reverse the judgment as to O'Ryan and remand for further proceedings.

O'Ryan's actions constituted actionable retali-     ation.