5RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0173P (6th Cir.)
File Name: 01a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————



ROBERT L. SMITH, JR.,
　　　*Plaintiff-Appellant,*

　　　*v.*

No. 99-6160

DONAL CAMPBELL, Warden;
JANICE BUCHANAN; KAY
WINKLER,
　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 97-00498—Curtis L. Collier, District Judge.

Submitted: November 1, 2000

Decided and Filed: May 24, 2001

Before: MERRITT and SILER, Circuit Judges; SARGUS,
District Judge.

————————

*The Honorable Edmund A. Sargus, Jr., United States District Judge
for the Southern District of Ohio, sitting by designation.

1

————————————

**COUNSEL**

————————————

**ON BRIEF:** Robert L. Smith, Jr., Whiteville, Tennessee, pro se. Mark A. Hudson, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

————————————

**OPINION**

————————————

SARGUS, District Judge. In this prisoner civil rights claim brought under 42 U.S.C. § 1983, Appellant Robert Smith appeals from decisions of the District Court dismissing portions of his complaint for failure to state a claim and granting summary judgment in favor of Appellees Janice Buchanan and Kay Winkler on the remaining claims. Smith claims that the Appellees violated his constitutional rights when he was transferred from minimum security status at the Northeast Correctional Center to a maximum security status at the West Tennessee High Security Facility. According to Smith, the Appellees violated his First Amendment rights because they transferred him in retaliation for the grievances he filed against prison officials. Smith argues on appeal that the District Court erred by dismissing a portion of his claims for failure to state a claim and by granting summary judgment on the remainder of the claims. For the reasons that follow, this Court affirms the District Court.

**I. BACKGROUND.**

While serving a life sentence at the Northeast Correctional Complex, Smith worked as an inmate legal advisor. An inmate legal advisor assists other inmates by acting as their advocate in responding to disciplinary proceedings. In this capacity, Smith was asked to assist inmate Ricky Melvin in dealing with a disciplinary write-up. Melvin was written up by prison staff member Donna Fletcher as a result of Melvin's

the unit which resulted in the Warden giving a strong warning to Smith against any such further conduct.

The second incident involved the dispute with Fletcher in the dining room when Smith was trying to interview the witnesses. Smith went to the kitchen to interview a new staff member, who appeared to be intimidated by him. (J.A. at 60). When Fletcher intervened, Smith threatened her.

These incidents were, according to the Warden, consistent with Smith's general conduct as inmate advisor. The Warden testified that Smith was a "continual problem" who abused his role as inmate advisor. (J.A. at 60). Smith's aggressive attitude and conduct was detrimental to the prison staff and was the motivation for his job loss and transfer. (*Id.* at 60-61). Smith offers no evidence to demonstrate that the Warden was not motivated by these incidents.

In sum, this Court concludes that even if Smith had satisfied his initial burden of demonstrating that his allegedly protected activity played a role in the decision to transfer him, the Appellees have satisfied their burden to show that Smith would have been transferred even if he had not engaged in the protected activity. Courts afford prison administrators wide ranging deference in their judgments needed to preserve internal order and discipline and to maintain institutional security. *Ward*, F.3d at 273.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

participation in an incident that occurred in the prison dining room.

On September 19, 1997, Smith attempted to interview members of the prison kitchen staff who may have been involved in the dining room incident that led to Melvin's write-up. According to Smith, Fletcher arrived and began to interfere with the interview of a staff member. (J.A. at 63). Fletcher told Smith that he had to produce a signed witness form before he could conduct the interview. (J.A. at 83). An argument ensued about the necessity of the form. According to Fletcher, Smith threatened her and as a result she issued a disciplinary report against him. (J.A. at 70). On the same day, Smith was terminated from his job as an inmate legal advisor.

Smith filed three grievances stemming from the dining room interview incident including a grievance asserting that his job termination was retaliatory. The grievance committee, in response to this grievance, determined that Smith's removal from his job was proper because Smith's aggressive attitudes in the discharge of his job duties caused problems with inmates and staff. On appeal, the Warden and the Assistant Commissioner for the Department of Correction agreed.

On September 24, 1997, Smith was gathering documentation to file a grievance and this lawsuit. (J.A. at 84). According to Smith, his counselor, Appellee Kay Winkler told him that she was a "company girl," and that the prison could transfer Smith and say it was based on institutional needs. (J.A. at 64, 84). Smith alleges that Winkler then left and returned a short time later telling Smith that Appellee Buchanan had told her to give Smith 24-hour notice of his reclassification. (J.A. at 64, 84). Smith refused to sign the reclassification form. Winkler then gave Smith 48-hour verbal notice of his reclassification, stating that Appellee Buchanan had instructed her to do so. (J.A. at 84).

Two days later, a special reclassification hearing was held. At the hearing, Warden Carlton decided to transfer Smith to

the West Tennessee High Security Facility, a maximum security prison. (J.A. at 59). Appellees Buchanan and Winkler had no involvement in the decision, apart from carrying out the normal administrative procedures involved in a transfer. According to the affidavit of the Warden, the decision to transfer Smith was not retaliatory but rather was based on the need to give the staff and inmates relief from Smith's loud, belligerent, aggressive and intimidating manner which was detrimental to the staff and inmates alike.

Smith originally filed this suit against twenty-six defendants asserting violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986 and alleging a conspiracy to violate his rights in retaliation for his zealous work as an inmate legal advisor. Smith's thirty-eight page, one hundred and forty-eight paragraph complaint details numerous examples meant to illustrate the conspiracy and sets forth a wide variety of claims.

The District Court screened the complaint under 28 U.S.C. § 1915. With the exceptions of Smith's retaliation claim against the Appellees and an equal protection claim against another defendant which was transferred to another district, the District Court dismissed all of Smith's claims for failure to state a claim. Smith appeals this determination.

The District Court subsequently granted the Appellees' motion for summary judgment on Smith's retaliation claim finding that Smith did not offer sufficient evidentiary support to show that the filing of the grievance played any role in his transfer. The Court noted that prison officials should be afforded deference in the creation of policies and practices concerning internal order and institutional security. On these bases, the Court concluded that Smith's transfer was motivated by a need to give the staff and inmates relief from Smith's aggressive and intimidating demeanor. (J.A. at 87-88). Smith also appeals from this determination.

claim because they were not involved in the decision to terminate the plaintiff); *cf. Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.1998) ("Statements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden . . . of demonstrating animus.") (internal quotations omitted).

Aside from Winkler's statements, the temporal proximity between Smith filing his grievances and the decision to transfer him provides some circumstantial support for a causal connection. However, the Court concludes that this evidence alone is not sufficient to meet Smith's burden to show that the filing of grievances was a substantial or motivating factor for his transfer.

Even if temporal proximity did satisfy Smith's burden, such evidence would be easily overcome by the unrefuted evidence offered by the Appellees that the transfer did not occur in retaliation for the filing of grievances. The Appellees are entitled to prevail on summary judgment, if the Appellees can show that the same action would have been taken in the absence of protected activity. According to the Warden's testimony, Smith lost his prison job and was transferred to another facility because of two incidents involving aggressive, belligerent, and intimidating behavior towards other inmates and the staff.

In the first incident, the Warden testified that Smith was barred from representing mentally retarded inmates held in a special unit of the prison. The Warden testified that several of the inmates had complained to the administration that Smith pressured them to engage in illicit activities. (J.A. at 22). In addition, the Warden specifically stated "[s]ome inmates were so frightened of Mr. Smith that they were afraid to leave the unit for medication or meals." (J.A. at 59). The Warden further testified that, as a result of Smith's misconduct, the director of the unit asked that Smith be banned from representing inmates in the unit. After Smith was banned from the unit, he verbally attacked the director of

### B. CAUSAL CONNECTION.

Even if Smith had engaged in a protected activity, Appellees also contend that Smith failed to put forth evidence to show a causal connection between his filing of grievances and his transfer. As discussed above, the District Court held that the transfer was not retaliatory, relying on the affidavit of Warden Carlton and concluding that Smith was transferred to provide the staff and other inmates relief from Smith's disruptive behavior. The District Court ruled that Smith failed to adequately address the two incidents the Warden cited as the reasons for Smith's transfer. The District Court also ruled that aside from what it termed "ambiguous" statements by Winkler, the plaintiff had failed to show that the filing of grievances played any role in the decision to transfer. This Court agrees with the lower court.

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue – that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Id.*

Other than the comments by Winkler, Smith offers no evidence to demonstrate that his activities in filing grievances played any role in his transfer, let alone a substantial role. *See Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999). Winkler's comments do not demonstrate a causal connection between his filing of grievances and the decision to transfer him because it is uncontroverted that she was not the decisionmaker in this case. (J.A. at 59). Consequently, her statements cannot be taken as evidence of a retaliatory motive. *See Sheehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on plaintiff's retaliation

### II. DISMISSAL.

We review a decision to dismiss a prisoner's complaint pursuant to 28 U.S.C. § 1915 *de novo*. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997). When screening a prisoner complaint, the district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. §§ 1915(e)(2), 1915(A).

The District Court in this case dismissed a number of Smith's claims for failure to state a claim upon which relief could be granted. The District Court ruled that Smith's claims failed either because they were based on non-existent constitutional rights or else Smith failed to allege facts sufficient to state a cognizable constitutional claim. (J.A. 49-51). Upon review of Smith's complaint and the lower court's decision, this Court concludes that the District Court correctly applied 28 U.S.C. § 1915.

### III. SUMMARY JUDGMENT.

Smith also appeals from the District Court's opinion and order granting the Appellees' motion for summary judgment on Smith's First Amendment retaliation claim. We review a grant of summary judgment *de novo*. *Johnson v. United States Postal Serv.*, 64 F.3d 233, 236 (6th Cir.1995). The party seeking summary judgment has the initial burden of showing that there is no genuine issue as to any material fact, and we will reverse a grant of summary judgment if the nonmoving party has presented evidence of specific facts, which, viewed in the most favorable light, indicates that there is a genuine issue for trial. *Id.* Although the nonmoving party "may not rest upon the mere allegations or denials" of his pleading, Fed. R. Civ. P. 56(e), a verified complaint or additional affidavit, as presented in this case, satisfies the

burden of the nonmovant to respond. Summary judgment is appropriate "if the pleadings . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court is not to weigh evidence in making this decision; summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: 1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *See id.* "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id.* at 395. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*; *Thaddeus-X*, 175 F.3d at 399.

## A.  PROTECTED ACTIVITY.

As a threshold matter, it must first be established that the plaintiff was engaged in conduct that is afforded

constitutional protection. Smith's claim is that he was retaliated against because of the grievances that he filed on behalf of himself and on behalf of others. (J.A. at 52).

While it is true that a prisoner has a First Amendment right to file grievances against prison officials, *see Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996),[1] "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395. Thus, while a prisoner may have a right to file grievances against prison officials, he or she cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives. *See Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995) ("The ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management.").

In this case, the Warden terminated Smith from his position as inmate legal advisor and transferred him to another prison because of his aggressive attitudes in the discharge of his job duties and his attempts to intimidate staff members. In other words, although Smith may have  had a right to file grievances against prison officials on behalf of himself and others, he did so in a manner that violated legitimate prison regulations and objectives. Consequently, the Court concludes that Smith failed to demonstrate a genuine issue of fact that he was engaged in a protected activity.

---

[1] "It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims. [citation omitted]. Rather, a 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Thaddeus-X,* 175 F.3d at 395; *see also Shaw v. Murphy*, 121 S. Ct. 1475 (2001)(holding that prisoners do not possess a special First Amendment right to provide legal assistance to fellow inmates). This Court assumes without deciding that Smith's assistance to other prisoners was necessary for those prisoners to vindicate their right to access the courts.