**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0316n.06

No. 19-1455

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 02, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JASON HOLSAPPLE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TROY CUNNINGHAM, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee | ) | |

**Before: SUTTON, BUSH, and READLER, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** This litigation originates from an ongoing conflict involving Jason Holsapple, Troy Cunningham, and the Bay County Sheriff's Office, based in Bay City, Michigan. Referencing this negative history, Holsapple alleges that Cunningham retaliated against him in 2017 by not selecting him for one of nine road patrol deputy positions open at the time. Holsapple challenges Cunningham's hiring decision, alleging political-affiliation discrimination and free-speech retaliation in violation of the First Amendment; retaliation in violation of Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA"); and defamation of character, false-light invasion of privacy, and breach of contract in violation of Michigan common law.

For the reasons explained below, we conclude that there are no genuinely disputed issues of material fact and that Holsapple's claims fail as a matter of law. We therefore **AFFIRM** summary judgment for Cunningham.

## I.

Between 2011 and 2012, Holsapple was employed as a Bay County sheriff's deputy. In March 2012, his employment was terminated. Holsapple then filed sued against various Bay County officials, including Cunningham (then a lieutenant in the Bay County Police Department), in state court. Holsapple also brought an action in federal court (not the current suit) against Cunningham, Miller (then the Bay County sheriff), and the municipality of Bay County. Holsapple alleged he was terminated in retaliation for supporting Miller's political opponent, Bobby Lee, in Bay County's 2012 sheriff election. Cunningham maintains that he was not involved in Miller's decision to terminate Holsapple.

In February 2014, the district court in the first federal litigation held that a question of fact existed regarding whether Miller knew before Holsapple's termination that he had backed Lee in the election.[1] *Holsapple v Miller*, No. 13-11039, 2014 WL 525391, at *6 (E.D. Mich. Feb. 10, 2014). The court found that the temporal proximity between Miller's learning of Holsapple's protected activity and his decision to terminate Holsapple was sufficiently close to allow Holsapple's *prima facie* case for First Amendment retaliation to survive summary judgment. *Id.* The court also concluded there was a question of fact as to whether Miller would have made the same decision to terminate Holsapple absent his expressed political support for Lee. *Id.* at *7. The

---

[1] Explaining this holding, the district court noted:

> [Bay County Sheriff's] Deputy Prezzato told Sheriff Miller … that Holsapple had informed her "when Bob Lee wins the election, he is going to go up to Lt. Cunningham and tell him 'fuck you.'" Prezzato Statement 6. This statement, along with Deputy Prezzato's assertion that she told Sheriff Miller about it, is sufficient to frame a genuine issue of fact as to whether Sheriff Miller knew of Holsapple's political leanings the day before he was fired.

*Holsapple v Miller*, No. 13-11039, 2014 WL 525391, at *6 (E.D. Mich. Feb. 10, 2014).

court determined that the defendants had not eliminated the factual dispute with their assertions that Holsapple was terminated "only after the Sheriff received numerous complaints from [Holsapple's] co-workers for reasons such as his negative attitude and disparaging and insubordinate remarks concerning the workplace, fellow deputies, command offices, and the Sheriff and Bay County citizens." *Id.*

Holsapple's state court suit and first federal action were resolved through a settlement in May 2014. Relevant to the present appeal are three settlement provisions:

- First, the agreement contained <u>a mutual-release-of-claims provision</u>. It released the parties of any actions "arising out of [Holsapple's] employment and separation therefrom with the [Bay County Police Department], including but not limited to, any claim which [Holsapple] has asserted, now asserts, or could have asserted . . . which HOLSAPPLE has had or may have against DEFENDANTS, arising out of any and all claims that were raised or could have been raised in the Litigation." (Order Granting Defendant's Motion for Summary Judgment, RE 24, Page ID # 1074).

- Second, the agreement <u>limited Holsapple's ability to seek any employment with Bay County</u>, "including but not limited to the Sheriff's office, at any time prior to December 21, 2016." (*Id.*)

- Third, the agreement contained a <u>non-disparagement clause</u>, stipulating that the parties and their representatives would avoid "defaming or disparaging, either orally or in writing, the reputations, characters, or businesses of any of the other parties to the Litigation."[2] (*Id.*)

In early 2016, Miller announced that he would not seek re-election for Bay County sheriff. Thereafter, Cunningham (then the undersheriff) ran against Holsapple for the sheriff vacancy. Cunningham won the election.

During Sheriff Cunningham's first year in office (2017), the Bay County Sheriff's Office sought applicants for employment as road patrol deputies. Holsapple claims that he applied for

---

[2] The non-disparagement clause, however, failed to address any relevant actionability, associated damages or scope in connection with a potential breach of that provision.

3

one of those positions on three different occasions; however, he was never hired. According to

Cunningham, he did not consider Holsapple to be a viable candidate for any of the open positions

for several reasons:

- Cunningham asserted that during Holsapple's employment as a Bay County sheriff's deputy between 2011 and 2012, he had "a horrid attitude at our place, very negative, negative towards the other employees." (Deposition of T. Cunningham, RE 1702, Page ID 408, 411). For example, according to Cunningham, Holsapple would greet his coworkers in the locker room by saying "welcome to hell." (*Id*.)

- Cunningham also claimed that Holsapple "had no respect or didn't care at all for any of the command structure down [at the department], myself included. I know he didn't like me and was apparently waiting to say, 'fuck you' to me for not giving him a rifle or something. He thought a lot of the deputies were lazy, didn't think command did a good job. . . ." (*Id*.)

- According to Cunningham, the decision to terminate Holsapple in 2012 was a result of his negative behavior and its adverse impact on the morale of the Bay County Sheriff's Office. (Deposition of T. Cunningham, RE 17-2, Page ID # 414). Of any factor considered, Holsapple's previous termination was the most significant, according to Cunningham: "I don't think [Holsapple] . . . is a good police officer and should be working as a police officer." (*Id*. at 416-418, 422-23). He also believed that Holsapple lacked the requisite character traits of an officer, stating, "I think [Holsapple's] got a bad attitude . . . didn't work well. I don't think he's always truthful." (*Id*.).

In the wake of Cunningham's decision not to hire him, Holsapple filed a complaint in a

second federal case (the one on appeal before us) on April 23, 2018, and amended it on May 17,

2018. On December 21, 2018, Cunningham moved for summary judgment on all of Holsapple's

claims. On February 15, 2018, Judge Ludington granted the motion, finding no violation of either

federal or state law by Cunningham and thus no need to reach the questions of Cunningham's

qualified immunity or Bay County's municipal liability. Holsapple then filed a motion for

reconsideration, which the court denied on March 22, 2019. On April 22, 2019, Holsapple filed

this timely appeal.

## II.

"We review de novo a district court's decision to grant a motion for summary judgment." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 535 (6th Cir. 2014) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir.2009)). Summary judgment obtains if the moving party can "show [] that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civil P. 56(a)) (alteration in original). In our review of the facts, all reasonable inferences must be drawn in the light most favorable to the non-moving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 587 (1986). However, "if the non-moving party is unable to present sufficient evidence to permit a reasonable jury to find in her or his favor, the court should grant summary judgment in favor of the movant." *Id.* at 536 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### A. First Amendment Claims

Holsapple argues that Cunningham failed to hire him as a road patrol deputy in 2017 in retaliation for his exercising his First Amendment rights of political association (count I) and free speech (count II). Holsapple identifies the following conduct as constitutionally protected speech and activities:

- his support for Bobby Lee, Miller's opponent in the 2012 election;
- his candidacy against Cunningham for the vacant sheriff position in the 2016 election; and,
- his 2012 state court lawsuit, in which he alleged, among other things, that Cunningham had defamed him.[3]

---

[3] On March 26, 2013, Judge Kenneth Schmidt of the Bay County Circuit Court dismissed the entirety of Holsapple's state court lawsuit, including Holsapple's defamation claim against Cunningham. Holsapple then appealed; however, the parties ultimately stipulated to dismiss the appeal with prejudice.

To prevail on a civil rights claim pursuant to 42 U.S.C. § 1983, Holsapple must demonstrate (1) "a person acting under color of state law"; (2) "deprived [him] of a right secured by the Constitution or laws of the United States." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006); *see Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001). As acting sheriff of Bay County, Cunningham concedes the first element of this claim. However, he disputes Holsapple's contention that he violated the First Amendment by not hiring Holsapple as a road patrol deputy.

In evaluating Holsapple's free-speech retaliation claim, we address three questions. First, "[w]as the individual involved in 'constitutionally protected' activity—here activity protected by the free speech clause of the First Amendment?" *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)). Second, "[w]ould the employer's conduct discourage individuals of 'ordinary firmness' from continuing to do what they were doing?" *Id*. (citing *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998)); *see Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982). And third, "[w]as the employee's exercise of constitutionally protected rights 'a motivating factor' behind the employer's conduct?" *Id.* (quoting *Mt. Healthy,* 429 U.S. at 287). These same questions are asked to evaluate political-association retaliation claims under the First Amendment. *See Sowards v. Loudon Cty., Tenn*., 203 F.3d 426, 431 (6th Cir. 2000); *see also e Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). As to either type of retaliation, the "claimant must win each point to prevail." *Evans-Marshall*, 624 F.3d at 337. However, in this case, the parties only contest the third "motivating factor" element, which is an issue of causation.

To prove causation, Holsapple must show that his First Amendment protected activities were a "motivating factor," *Greene v. Barber*, 310 F3d 889, 897 (6th Cir. 2002)), or "essentially [a] but-for cause – 'without which the action being challenged simply would not have been taken.'"

*Leonard v Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Greene*, 310 F.3d at 897.)).

"[B]are allegations of malice [do] not suffice to establish a constitutional claim." *Crawford-El. v.*

*Britton*, 523 U.S. 574, 588 (1998). Rather, the plaintiff, must "point to specific, nonconclusory

allegations reasonably linking [his] [protected activities] to employer discipline." *Rodgers v.*

*Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The plaintiff may produce "direct or circumstantial

evidence, including showing temporal proximity between engaging in protected activity and

suffering an adverse employment action, that may create an inference of causation," *Eckerman v.*

*Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010), and this circuit has "considered the

temporal proximity between protected conduct and retaliatory acts as creating an inference of

retaliatory motive," *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). However, assessment of

an employer's motive is wholistic, meaning an "inference of retaliatory motive," based on claims

of temporal proximity, is evaluated under "the totality of the circumstances." *Vereecke v. Huron*

*Valley School Dis.* 609 F.33d 392, 401 (6th Cir. 2010). "[W]hen other evidence of retaliatory

motive is lacking, [our court] has been reluctant to hold that temporal proximity is sufficient to

establish causation." *Coleman v. Bowerman*, 474 F.App'x 435, 437 (6th Cir. 2012) (per curiam)

(citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

Nonetheless, even if Holsapple can meet his initial burden, Cunningham, as defendant,

would still be entitled to summary judgment if he can show "that the same action would have been

taken in the absence of [Holsapple's] protected activity," [4] *Smith*, 250 F.3d at 1037; *see*

*Thaddeus-X*, 175 F.3d at 399. Furthermore, in a § 1983 suit, "there is a strong presumption that

---

[4] As correctly noted by the district court, the *McDonnell Douglas* burden-shifting analysis does not apply within the context of First Amendment retaliation claims. Therefore, if the defendant can show that the same action would have been taken absent plaintiff's protected activity, "the burden does not shift back to a plaintiff to show pretext." (Order Granting Defendant's Motion for Summary Judgment, RE 24, Page ID # 1079); *see Smith*, 250 F.3d at 1038.

the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Gardenhire v Schubert*, 205 F3d 303, 319 (6th Cir. 2000) (citing *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)).

Holsapple references specific evidence that he submitted to the district court, each of which, he alleges, shows Cunningham's retaliatory intent in firing him. As to each item of proof, he argues that the district court erred in minimizing its relevancy and import, which in turn, led to the court's conclusion that he had failed to establish a genuine dispute of material fact as to the causal connection between his protected free speech and political association activities (*i.e.,* his support of Lee for sheriff in 2012; his opposition to Cunningham during the 2016 election; and his 2012 litigation against Cunningham) and Cunningham's decision not to hire him as a road patrol deputy in 2017. However, as explained below, because we find Holsapple's evidence to be insufficient in creating a jury question on the requisite causal connection, Holsapple has not overcome the strong presumption in favor of Cunningham's proper hiring discretion. The following discussion addresses the relevant proof in more detail.

### 1. Cunningham's Deposition

The first piece of evidence analyzed by the district court was an excerpt from Cunningham's deposition testimony. There, Cunningham admitted that his views of Holsapple were "influenced" by the prior lawsuit that Holsapple had filed against him. However, in Cunningham's response to the next question, which asked whether he could put this view behind him and work with Holsapple, he answered affirmatively, stating he would have been able to do so "if [he] thought [Holsapple] was a good candidate," or if he had "wanted to hire [Holsapple]":

> Deposition Question: Well, you were named in the prior lawsuit, weren't you?
> Cunningham's Answer: Correct.
> Deposition Question: Did that influence your view of Jason at all?
> Cunningham's Answer: Yes.
> Deposition Question: So you would be able to put that behind you and work with him?
> Cunningham's Answer: Yes. If I thought he was a good candidate or wanted to hire him, yes.

(10/19/18 Cunningham deposition, RE 21-27, Page ID # 1017).

Reading this exchange in view of the district court's interpretation, Holsapple contends that Cunningham's response creates an inference that he had a "poisoned" view of Holsapple because of his past actions. Therefore, according to Holsapple, Cunningham's statement was "direct evidence that [Holsapple's] protected activity shaped [Cunningham's] decision-making process" regarding Holsapple's eligibility for the open position. (Appellant Br., at 19).

Holsapple's assertions reflect a reaching view of Cunningham's plain statements. The more plausible understanding of Cunningham's statements is to take them to mean what they say. Cunningham honestly admits that he was "influenced"—as many reasonable individuals would be—in his views of Holsapple because of a prior dismissed lawsuit Holsapple had filed against him. But, he qualifies this admission by stating that he would be willing to put those views behind him, if in fact, Holsapple were a "good candidate"—likely one who could offer the specific set of personal and professional attributes required of a road patrol deputy. And of course, an evaluation of a candidate's full package of personal and professional skills, particularly for a sensitive law enforcement position, falls well within the discretion of an employer like Cunningham. Therefore, this portion of Cunningham's deposition testimony does not create a jury issue on the question of causation.

## 2. Commentary by Cunningham's Lawyer

Holsapple also argues that the district court incorrectly evaluated public written statements made by Amber Davis-Johnson, Bay County's corporate counsel and Cunningham's attorney, regarding Holsapple's 2017 lawsuit. Specifically, in May 2018, a local, online newspaper, *MLive*, published an article about the litigation. In preparation for the article, the paper contacted Holsapple and Cunningham. Although both men declined to comment directly, each had a representative speak for him—Davis-Johnson on behalf of Cunningham, and Victor Mastromarco, the lawyer for Holsapple, on the latter's behalf. Both sides' comments appeared in the following section of the article:

> Holsapple declined to comment when contacted by The Bay City Times-MLive, referring the matter to [Victor] Mastromarco, his attorney. "This is a clear, plain case of retaliation by Cunningham," Mastromarco said. . . . "People who have talked to (Holsapple) have said Cunningham has made statements that he's not going to hire Holsapple," Mastromarco continued. "It's not (Cunningham's) prerogative. His prerogative is being colored by Holsapple having filed a (prior) lawsuit against him."

> Cunningham also declined to comment to MLive, referring matters to Amber Davis-Johnson, the county's corporation counsel. "The Bay County Sheriff strongly denies the allegations in Mr. Holsapple's latest complaint," Davis-Johnson said. "It is unfortunate that Mr. Holsapple continues to waste tax payer [sic] dollars on unsubstantiated lawsuits the sheriff's office and Bay County are forced to defend. The sheriff remains confident that Mr. Holsapple's complaint will be dismissed in its entirety and in short order. Despite Mr. Holsapple's assertions, the sheriff is under no obligation to re-hire previously discharged employees whose past work ethic and performance with the department suggest he would not best serve the Bay County citizens the sheriff's office is entrusted to protect."

(MLive Article, RE 17-8, Page ID # 661-668)

Holsapple takes strong issue with Davis-Johnson's statement, referencing it in connection with claims under both the First Amendment and state law (the latter of which is analyzed below). For the First Amendment claims in particular, Holsapple cites Davis-Johnson's characterization of his lawsuits as a "waste of taxpayers' dollars," as well as Cunningham's previous statements that

described Holsapple's lawsuit as a "waste." (Appellant Br. at 20).[5]  According to Holsapple, under the *McDonnell Douglas* burden-shifting framework, evidence of this nature can be "relevant to any showing of pretext" harbored by an employer-defendant in reaction to an employee's "legitimate civil rights activities." (*Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).  Namely, in *McDonnell Douglas*, as Holsapple explains, the "Supreme Court found such evidence to be evidence of pretext, precisely because it was relevant to the employer's motivation and helped to answer the question of whether the employer was motivated by its stated reason or an impermissible reason." (*Id.*).

Holsapple's argument is misplaced on multiple levels.  As an initial matter, and as the district court noted correctly, *McDonnell Douglas* concerns race discrimination—not First Amendment retaliation; therefore, Holsapple's cherry-picking of that opinion's statements—no matter how creative the effort—will not help him establish the causation element of a prima facie case for First Amendment retaliation.  Instead of explaining the relevancy of *McDonnell Douglas*, as the district court judge requested he do, Holsapple makes only the conclusory statement in his appellate brief that "if an inference regarding an employer's motivation can be drawn from certain evidence in one context, there is no rational basis to exclude the same inference in the other context."  This assertion alone is not enough to persuade.

Nor does Holsapple's citation of *Whittie v. City of River Rouge*, No. 14-11070, 2017 WL 4005943 at *1–3, *7 (E.D. Mich. Sept. 12, 2017), move the needle of his argument.  Holsapple argues that in *Whittie* the employer's "'negative attitude' towards [the] [p]laintiff's reports of

---

[5] Note that Holsapple does not appear to allege with any particularity when, in fact, Cunningham made this characterization of Holsapple's activities.  He only seems to offer that the comments were made during the 2016 election.  However, if this was the case, then it even further dilutes the force of Holsapple's argument, given that commentary of this nature is fairly inevitable during a political campaign between adversaries.

wrongdoing within the [police] department" was one of the facts that helped establish plaintiff-employee's *prima facie* First Amendment retaliation case based on his termination from the department. However, for several reasons, *Whittie* is inapposite.

First, in *Whittie*, the defendant-employer's "negative" conduct towards the plaintiff-employee was far more persistent—occurring over the course of nearly a year—as compared to the one-time comments made by Cunningham and his attorney. *Id.* at *1–3. Second, the *Whittie* defendant addressed the negative statements directly to the employee *right after* the employee's protected speech, thus establishing close temporal proximity between the protected activity and events leading up to the plaintiff's termination—a nexus that our court assessed to be correlated with an employer's "retaliatory motive." Third, an unfavorable relationship existed between Cunningham and Holsapple for many years; whereas in *Whittie,* the plaintiff allegedly had a "harmonious" relationship with his employer, which only changed abruptly after the plaintiff's protected speech (thus, suggesting the employer's reasons for firing him were pretext). *Id.* at *1–3, *7. Also, unlike the employer in *Whittie*, Cunningham and his attorney did not speak directly to the employee in conjunction with the challenged employment decision. Rather, Cunningham's characterization of Holsapple's activities as a "waste" was allegedly stated by him in passing during the 2016 election, while the comments made by Davis-Johnson were directed to a third-party *Bay County Times* journalist, who had specifically reached out for comment regarding the case. Finally, and most significantly, *Whittie*, along with the other case law Holsapple cites, deals with an employer's retaliatory action against an active employee. *Id.* Here, by contrast, Cunningham decided *not* to hire Holsapple (*i.e.* an omission versus an affirmative act), who was a *non*-employee at the time, for the road patrol deputy position that likely attracted a number of qualified candidates.

Ultimately then, without more grounding in actual case law that either speaks to the issue of First Amendment retaliation in the employment context, or alternatively, speaks to the issue of employer retaliation in the case of an omission—*not* hiring a job applicant—Holsapple's argument that this court should infer a "retaliatory motivation" from the statements made by Cunningham and his lawyer is misplaced. Therefore, these statements do not create a genuine dispute of material fact as to causation.

### 3. Veterans' Preference

Holsapple also argues that the district court erred in not considering Cunningham's alleged failure to give Holsapple "veterans' preference" under the Michigan Veteran's Preference Act ("VPA"), Mich. Comp. Laws 35.401, *et seq*. Specifically, Holsapple argues that by not hiring him, Cunningham failed to adhere to the provisions of Mich. Comp. Laws 35.401, and that this failure, in turn, demonstrates his retaliatory motive. We find this argument unpersuasive for several reasons.

As the district court correctly noted, Holsapple did not, and does not now, assert a claim under Mich. Comp. Laws 35.401, *et seq.* Furthermore, as Cunningham notes, even if Holsapple was pursuing a claim under the Michigan Veteran's Preference Act, he has improperly invoked the statute, because according to Mich. Comp. Laws 35.404, a veteran who is rejected for "the position for which he has applied [] shall be entitled to remedy therefore by mandamus to enforce the provisions of this act." Because Holsapple did not pursue this remedy at the district court level, he may not do so here.

A plain reading of the relevant statutory language conflicts with Holsapple's assertion that Cunningham's alleged lack of compliance with the Michigan Veteran's Preference Act is proof of Cunningham's retaliatory motive. Holsapple contends that Bay County was required to offer him

one of the nine vacant road patrol positions under Mich. Comp. Laws 35.401(1), which provides that "[i]n every public department and upon the public works of the state and of every county and municipal corporation of this state, a veteran *shall be preferred* for appointment and employment" (emphasis added). The phrase "shall be preferred," however, lacks the definitive force of a statement such as "must be hired." The sentence is also further qualified by the subsequent portion of Mich. Comp. Laws 35.401(1), which states that "the applicant shall be of *good moral character* and . . . possess other *requisite qualifications*, after credit allowed by any civil service laws" (emphasis added). Therefore, on its face, this provision still leaves discretion with the employer to judge veteran candidates based on their qualifications and moral character—discretion that Cunningham was entitled to exercise in hiring road patrol deputies.

Furthermore, Holsapple's stubborn line of argument that he *had* to be hired by Cunningham as long as he met the minimum qualifications of the road patrol deputy job, is undermined by *Carter v. Ann Arbor City Attorney*, 271 Mich. App. 425, 434–35 (2006). There, the court dismissed a plaintiff's similar argument, explaining:

> [a]lthough those qualifications may have established plaintiff's eligibility to be considered for the position, those qualifications did not establish that he was "qualified" for the job. The minimum requirements are very basic . . . therefore, to follow plaintiff's logic would leave defendant absolutely no discretion to consider specific experience or expertise that may be required to adequately perform the job . . . [U]nder plaintiff's reading of the VPA . . . once a veteran applicant met the bare minimum requirements, the hiring body would be compelled to hire the veteran and the hiring process would effectively cease. This would clearly be inconsistent with the policies and purposes behind the VPA.

*Id.* at 435.

The *Carter* court's reading of Mich. Comp. Laws 35.401(1) supports the district court's holding that Cunningham acted in his discretion when he decided not to hire Holsapple. Regardless of Holsapple's veteran status, Cunningham made a hiring judgment of Holsapple's

requisite qualifications and moral character, which included an assessment of the previous, negative workplace demeanor displayed by Holsapple towards his colleagues (i.e., Holsapple's propensity to greet coworkers in a negative manner, and his instances of undermining the authority of his supervisors), which ultimately led to his termination in 2012. Thus, Holsapple fails to establish Cunningham's lack of conformance with the Michigan Veteran's Preference Act or how this alleged lack of conformance demonstrated his retaliatory motive in not hiring Holsapple.

Nor does Holsapple persuade through his reliance again on *McDonnell Douglas* to argue that the comparable qualifications analysis applied by our court from that case establishes a factual question regarding Cunningham's alleged pretext in not hiring plaintiff. As noted, the *McDonnell Douglas* burden-shifting framework is inapplicable to a First Amendment retaliation claim. As discussed earlier, and as the district court noted correctly, Holsapple has not identified any Sixth Circuit precedent addressing a First Amendment retaliation claim predicated on a defendant-employer's failure to hire. Therefore, the court need not engage now in a comparative analysis of Holsapple's qualifications, as compared to the qualifications of other Road Patrol Deputy candidates.

### 4. Other Evidence

Holsapple also states that the district court improperly minimized the relevance of the following facts in its assessment of causation:

- the fact that Cunningham testified that he had no issues with Holsapple when he was a lieutenant in the Department, but then later had issues with him after Holsapple brought the 2012 state court lawsuit;
- the fact that Cunningham contacted Lieutenant House of Essexville to inquire as to whether the new director there would hire Holsapple;
- the fact that Cunningham did not hire a former political opponent, Sergeant Spence, for a road patrol position; and,

15

- the fact that Cunningham did not send other deputies to Delta College, the organization where Holsapple was an instructor, for training.

These facts are circumstantial at best—not direct evidence. They have a weak and indefinite temporal proximity to Cunningham's hiring decisions in 2017. They are not enough for a reasonable jury to find a retaliatory motive in Cunningham's decision not to hire Holsapple.

However, even if we were to deem any one of the evidentiary items to be relevant in showing causation in the context of a First Amendment free speech or political association retaliation claim, Cunningham would still be entitled to prevail on summary judgment if he can show that his decision not to hire Holsapple would have been made even in the absence of Holsapple's protected conduct. *Smith*, 250 F.3d at 1038. Cunningham has met this burden. Simply put, the evidence is sufficient to show that Cunningham had a valid basis not to hire Holsapple, even in the absence of Holsapple's protected conduct. We make this determination based on the following pieces of evidence, all of which show that Holsapple could be deemed an unsuitable employee in the eyes of a reasonable sheriff in Cunningham's position:

- Holsapple was previously terminated from the Bay County Sheriff's Office, which Cunningham believed was based on Holsapple's poor behavior that impacted the morale of the Office.
- Cunningham genuinely believed that Holsapple was "[not] a good police officer," and "should [not] be working as a police officer" because of his previously displayed "bad attitude," divisive character, and propensity to not "always [be] truthful" [6] (Deposition of T. Cunningham, RE 17-2, Page ID # 18-20, 24-25).

---

[6] In 2012, shortly after Holsapple's firing from the Bay County Sheriff's Office, then Lieutenant Cunningham was referenced in the following statement made available to the press:

Lt. Troy Cunningham, Holsapple's commanding officer said Holsapple was dismissed for insubordination and conduct detrimental to the Sheriff's Office. Cunningham said complaints against Holsapple included claims that he spoke negatively about coworkers and superiors behind their backs, that his conduct elicited complaints from the community and his overall attitude was harmful to the department as a whole. (08/02/12 article, RE. 21-16, Page ID # 6).

- As to the applicants whom Cunningham hired for the Road Patrol Deputy positions, none had been terminated from any prior employment.

Therefore, for the reasons outlined above, we agree with the district court that Holsapple failed to present sufficient evidence to permit a jury to find for him on the First Amendment claims. Having found no constitutional violation committed by Cunningham, the court need not address whether Cunningham possessed qualified immunity, nor whether Bay County is liable as a municipality under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

## B. PWDCRA Claim

Holsapple also appeals the district court's adverse summary judgment on his retaliation claim under the Michigan Persons with Disabilities Civil Rights Act (PWDCRA). Associated with this cause of action, Holsapple contends that Cunningham's decision not to hire him in 2017 was retaliation for his "protected activity" of filing a state court lawsuit in 2012 against a number of Bay County officers, including Cunningham. In that lawsuit, Holsapple claimed that Miller's firing of him constituted disability discrimination, also in violation of the PWDCRA.

To establish retaliation under the PWDCRA, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant was aware of plaintiff's protected activity; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.[7] *Aho v. Dep't. of Correction,* 688 N.W. 2d 104, 108–09 (Mich. Ct. App. 2004).

---

This suggests that Cunningham had an honest and genuine belief that Holsapple was ill-suited for the Road Patrol position.

[7] To obtain relief under the PWDCRA, Holsapple was required to prove that (1) he was "disabled" as outlined under the PWDCRA; (2) the disability was unrelated to his ability to perform his job duties; and (3) he had been discriminated against in one of the ways outlined by the statute. *See*

In its summary judgment ruling on Holsapple's PWDCRA claim, the district court did not answer definitively whether Holsapple's 2012 state court lawsuit constituted a "protected activity." However, in his briefing, Holsapple continues to allege that this litigation qualifies as a "protected activity" under the PWDCRA, and therefore, Cunningham's decision not to hire Holsapple in 2017, represented *prima facie* retaliation against that "protected activity."

The district court appropriately decided not to even evaluate the question of whether Holsapple's 2012 lawsuit sufficiently qualifies as "protected activity." This is because Holsapple's evidence in support of his PWDCRA claim—the same proof analyzed above as to his First Amendment claims—is insufficient to allow a reasonable jury to find the requisite causation between the assumed "protected activity" and Cunningham's 2017 decision not to hire him. Furthermore, as explained earlier, Cunningham has proof of valid, expressed discretionary reasons for his decision not to hire Holsapple in 2017, all of which related to Holsapple's (1) deemed sub-par performance as an officer between 2011 and 2012; (2) negative demeanor and negative interactions with coworkers; and (3) "propensity to be untruthful." Therefore, the district court properly granted summary judgment to Cunnington on the PWDCRA claim.

## C. Common-Law Claims

Holsapple also appeals the district court's adverse summary judgment rulings on his state common-law claims for defamation of character, false light invasion of privacy, and breach of contract. Our analysis of pertinent Michigan law confirms the soundness of the district court's grant of summary judgment against Holsapple on these claims as well.

---

*Kiely v. Heartland Rehabilitation Services, Inc.*, 359, F.3d 386, 389 (6th Cir. 2004). However, Judge Schmidt of the Bay County Circuit Court ultimately held that Holsapple could not establish a prima facie case under the PWDCRA, given that he failed to show that his alleged impairment and/or perceived impairment qualified as a disability.

In advancing his common-law counts, Holsapple again references the media statements of Davis-Johnson, Bay County corporation counsel and Cunningham's attorney, described earlier.

Holsapple contends that Cunningham defamed him through Davis-Johnson's commentary. A *prima facie* case of defamation under Michigan law requires a plaintiff to show "(1) that the defendant made a false and defamatory statement concerning the plaintiff, (2) that the defendant published the defamatory statement to a third party, (3) that the defendant was at least negligent in publishing the statement, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod)." *Colista v. Thomas*, 616 N.W.2d 249, 254 (Mich. Ct. App. 2000) (citing *Ireland v. Edwards*, 584 N.W.2d 632, 636–37 (1998)). "A communication is defamatory if it tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual. However, not all defamatory statements are actionable. If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Ireland*, 583 N.W.2d at 636; (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, (1990) and *Garvelink v. Detroit News*, 522 N.W.2d 883, 886 (Mich. Ct. App.1994)). Thus, "at least some expressions of opinion are protected." *Ireland*, 583 N.W.2d at 636 (citing *Milkovich,* 497 U.S. at 18–20).

Holsapple also claims false light invasion of privacy resulting from Davis-Johnson's statements. To establish a false light invasion of privacy claim under Michigan law, he must show "that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. In accordance with this standard, this cause of action cannot succeed if the contested statements are true." *Porter v.*

*Royal Oak*, 542 N.W.2d 905, 909 (Mich. Ct. App. 1995) (citing *Duran Detroit News*, 504 N.W.2d 715, 720–21 (Mich. Ct. App. 1993)).

In the proceedings below the parties disputed (1) whether the statement of Davis-Johnson could be imputed to Cunningham based on agency principles, or whether Davis-Johnson was a true party in interest with respect to Holsapple's claims; (2) whether Cunningham was entitled to absolute immunity for these statements; and (3) whether Holsapple could establish a factual question regarding malice. Without addressing these questions, however, the district court summarily dismissed Holsapple's defamation and false light invasion of privacy claims on the ground that Davis-Johnson's statements were subjective opinions that could not be proven false, as required to sustain either count.

On appeal, Holsapple argues that the particular remark made by Davis-Johnson, stating "that [Holsapple] would not best serve the Bay County citizens," represents a factual assertion. (Appellant Br., at 41 (citing MLive Article, RE 17-8, Page ID # 661-668)). We find Holsapple's argument unpersuasive and agree with the district court that Davis Johnson's comments, contingent as they were on subjective evaluation, were opinions that could not give rise to liability.

As the district court noted, the main takeaways of Davis-Johnson's comments can be summarized as follows: (1) Holsapple is wasting taxpayer dollars in his bringing of "unsubstantiated lawsuits" against Bay County and Bay County officials; and (2) Holsapple's "past work ethic and performance" with the Bay County Police Department "*suggest*" he would not best serve the Bay County citizens. (emphasis added).

We agree with the district court that Davis-Johnson's characterizations of the lawsuits as "unsubstantiated" and a "waste of taxpayer money," can neither be measured objectively nor definitively resolved. Rather, these characterizations represent the opinions of a public sector

attorney who, as a representative of Bay County and Cunningham, acted as an advocate of opinions in support of her positions.

As noted by the district court, Davis-Johnson did not issue any objectively verifiable and current description of Holsapple's "bad attitude," "poor performance," or "insufficient work ethic." Rather, looking in retrospect at Holsapple's history of employment for Bay County, Davis-Johnson described his "past work ethic and performance" as "*suggest[ing]* [that] he would not best serve the Bay County citizens" (emphasis added). This language clearly constitutes an opinion that cannot be definitively resolved by a third-party source, one way or the other. The district court therefore appropriately granted summary judgment to Cunningham on the defamation and false light claims.

Finally, Holsapple appeals the district court's dismissal of his breach-of-contract claim. He argues that Cunningham breached the settlement agreement through his attorney's commentary allegedly in violation of the non-disparagement clause. As with his defamation and false light claims, Holsapple argues that the remarks made by Davis-Johnson to the newspaper were "disparaging" and "defamatory" of his character.

The court concluded that there was no breach because Davis-Johnson's comments were subjective opinion, as opposed to facts that could be verifiably proven, and such opinion could not be reasonably interpreted by onlookers to be "defamatory" or "disparaging" of Holsapple's character. Although the court's conclusion is correct, there is more that can be said in support of its plain reading of the non-disparagement clause.

Under Michigan law, issues of contractual interpretation are reviewed de novo. *Holmes v. Holmes*, 760 N.W.2d 300, 307 (Mich. Ct. App. 2008). When assessing the contract at issue, a reviewing court must determine the contracting parties' intent by enforcing the document's plain

and unambiguous language. *Barclae v. Zarb*, 834 N.W.2d 100, 220 (Mich. Ct. App. 2013) (citing *Woodbury v. Res–Care Premier, Inc.*, 814 N.W.2d 308 (Mich. Ct. App. 2012)).

The key words from the non-disparagement clause at issue are "defaming or disparaging," which represent the material portion of the Agreement. (Settlement agreement, RE 17-3, Page ID # 445). Although "defaming" is not defined in the settlement, Michigan law provides us a legal definition of "defamatory," which, as noted, provides that "[i]f a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Ireland*, 583 N.W.2d at 636; *see Milkovich*, 497 U.S. at 20. Based on Michigan's legal definition, and our holding, where we affirmed the dismissal of Holsapple's defamation and false light claims, it does not appear that Davis-Johnson's statements were "defamatory." Because they could reasonably be interpreted as exhibiting her opinion about Holsapple's lawsuit and his past employment, they did not communicate "actual facts" that could objectively be verified as "false" by a third-party source. Therefore, based on Michigan law of defamation, Davis-Johnson's comments were not "defamatory" as to constitute a breach of contract.

However, that still leaves us to resolve the final question: Were Davis-Johnson's comments "disparaging" of Holsapple? Only Holsapple offered the district court a definition of "disparaging," which, incidentally, the court concluded, "suggest[ed] that disparaging remarks must also be false," meaning no breach of contract occurred. (Order Granting Defendant's Motion for Summary Judgment, RE 24, Page ID # 1089). However, in the appellate briefing, neither party has submitted any other definitions of "disparaging" to inform our analysis of Davis-Johnson's statements.

In situations where a term remains undefined in the contract, and the parties offer insufficient evidence of the intended meaning, we turn to definitions offered by secondary sources

and dictionaries. Although, not entirely analogous to the contract breach at issue here, the First

Restatement of Torts offers the following discussion of "disparagement."

> One who, without a privilege to do so, publishes matter which is untrue and *disparaging* to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.

Restatement (First) of Torts § 624 (1938) (emphasis added). Black's Law Dictionary (11th ed.

2019) also offers several definitions for "disparagement": "[a] derogatory comparison of one thing

with another"; ""[t]he act or an instance of unfairly castigating or detracting from the reputation

of someone or something"[8]; or "[a] false and injurious statement that discredits or detracts from

the reputation of another's character, property, product or business." *See Pizza Hut, Inc. v. Lundy*

*Enterprises, LLC*, No. 3:11-CV-0011-N, 2013 WL 12123949, at *5 (N.D. Tex. June 11, 2013). In

turn, Webster's Dictionary (2d ed. 2001) defines "disparage" as either: "to speak of or treat

slightingly" or "to bring reproach or discredit upon; lower the estimation of." *See Pizza Hut, Inc.*,

No. 3:11-CV-0011-N, 2013 WL 12123949, at *5. The Oxford English Dictionary defines

disparaging as an adjective "[t]hat speaks of or treats slightingly, that brings reproach or discredit."

*Disparage*, Oxford English Dictionary (Online ed. 2020). The Meriam-Webster Dictionary

defines it as "meant to belittle the value or importance of someone or something." *Disparaging*,

Merriam-Webster Dictionary (Online ed. 2020).

Unlike with "defamatory" statements, it is, admittedly, slightly less clear whether

"disparaging" comments must be objectively verifiable. Moreover, there is a lack of state or

---

[8] As to the second offered definition, Black's Law Dictionary (11th ed. 2019) does issue the following qualification: "Although may disparagements are untruthful or otherwise unfair, falsity is not a requirement. Any statement cast in a negative light may amount to a disparagement in the general sense."

federal case law that speaks directly to this issue. Nonetheless, the description offered by the Restatement of Torts suggests that the necessary elements of the disparagement tort include that a given statement is "false . . . in a manner that can be measured." Rawn Howard Reinhard, *The Tort of Disparagement and the Developing First Amendment*, 1987 Duke L.J. 727, 728 (1987). Similarly, in characterizing a "disparaging" statement as "false and injurious," the Black's Law definition also suggests that "disparaging" statements must be capable of being objectively verified—as opposed to simply representing an opinion offered by a party. We also consider the forum in which Davis-Johnson made her statements—an online newspaper article discussing the then-pending litigation—and her role as a legal advocate on behalf of Bay County and Cunningham. These considerations lead us to conclude that her comments fell in the category of opinionated advocacy rather than the bucket of factual statements about Holsapple's job performance or potential.

Even setting aside the question of objective verification, we agree with the district court's reasoning that the statements made by Davis-Johnson were not "disparaging," in that they were neither intended to "belittle" Holsapple's "value" or "importance" as deputy in the community, nor intended to bring "reproach" or "discredit" to him in the community. Rather, once again, it is important to evaluate the context in which Davis-Johnson offered the statements—during an interview with a newspaper journalist. Although it is unclear from the record, it is likely that Davis-Johnson anticipated that the article would feature both her legal position as the attorney representing Cunningham and Bay County, as well as the legal position of Mastromarco as the attorney for Holsapple. In such an adversarial setting, it would have been appropriate for her to offer advocacy of her client's legal position, which must be viewed as independent of her actually intending to speak for the purpose of "belittling" Holsapple's "value" as a deputy in Bay County.

In fact, adversarial advocacy of this nature would very likely have been perceived by readers as inevitable, given the ongoing, and very public, contested nature of the parties' legal battles.

## III.

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment to Cunningham on all of Holsapple's claims